## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02971-PAB-NRN

JOHN MEGGS, an Individual, and
ACCESS 4 ALL, INC., a Florida Non-Profit Corporation,

      Plaintiffs,

v.

COLORADO HOSPITALITY GROUP, LLC, a Colorado Limited Liability Company,

      Defendant.

---

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES

      Plaintiffs seek more than $20,000 in fees and costs for filing a copy-and-paste Complaint and performing no substantive legal work. They demand more than $20,000 even though they rejected a Rule 68 Offer of Judgment made at the very outset of the case that would have given them everything they sought in their Complaint. Instead, they actively worked to prevent the resolution of this case and forced Defendant to incur thousands in unnecessary attorneys' fees only to end up with a result that is less favorable to them than what the Offer of Judgment would have given them seven months earlier.

## I.    INTRODUCTION

      Plaintiffs have filed more than 45 ADA accessibility lawsuits in Colorado federal court since June 2021. Nearly all of the cases appear to be filed against Denver-area hotel

franchisees (the vast majority of which are minority-owned). In each case Meggs alleges that he planned to stay overnight at the subject hotels and that he intends to return at some point in the future. Opposing counsel even admits to targeting hotels that received PPP loans (apparently believing they have excess cash to quickly settle these cases).

As more fully discussed below, the Court has ample justification to outright deny the Plaintiff's fee application, or at the very minimum, reduce their fees to an amount that does not reward their litigation tactics—which are designed to delay and unnecessarily inflate their fees and costs.

Plaintiffs' also (unreasonably) seek more than $7,000 in "expert fees. Their "expert", who is based in Florida, apparently flew to Denver on two separate occasions to produce nearly duplicate inspection reports. Again, completely unnecessary. Defendant, on the other hand, retained a local ADA inspection company, Colorado Inspection Services, LLC, to inspect its property and identify any ADA violations. Colorado Inspection Services inspected the property, produced a thorough 75-page report of their findings, and only charged Defendant $750 for it. Plaintiffs should not be rewarded for twice flying a Florida-based "expert" to Colorado *who charged ten times* what a local company would have to inspect the property.

Lastly, any potential award to Plaintiffs should be offset by the attorneys' fees that Defendant was unnecessarily forced to incur *after* Plaintiffs rejected Defendant's Rule 68 Offer of Judgment. Defendant was forced to file a Motion for Judgment on the Pleadings *against itself* because there was no other way to resolve the case on its merits without entering into a private settlement. Plaintiffs even opposed Defendant's Motion for Judgment on the Pleadings against itself—again, in an attempt to delay this case and drive up their fees/costs to create leverage and force Defendant to settle out-of-court.

This Court has discretion to drastically reduce (or outright reject) Plaintiffs' application for fees and costs. It should do so here, sending a message to all serial ADA

litigants in Colorado that unreasonable litigation tactics intended to cause delay and artificially inflate attorneys' fees will not be rewarded when it is time to assess reasonable attorneys' fees and costs.

## II.   FACTUAL BACKGROUND

Defendant is a minority, female-owned hotel franchisee in Englewood, Colorado. Plaintiff Meggs, a California resident, is an ADA serial plaintiff who has filed nearly 50 ADA lawsuits in Colorado federal court since June 2021. Plaintiff Access 4 All, Inc. purports to be a Florida non-profit entity. Its corporate records indicate that Meggs is one of its Directors and that its "Place of Business" is Meggs' home address. **Exhibit A**. The other Director is Carlos Cuesta, who has also filed dozens of ADA lawsuits in Colorado federal court in recent months.

The procedural history of this case has been unusual and incredibly frustrating for Defendant.

### A.   The Complaint, Rule 68 Offer of Judgment, and subsequent settlement discussions.

Plaintiffs filed their copy-and-paste Complaint on November 04, 2021 [Doc. 3] and served it on Defendant on November 8, 2021. After identifying the various ADA violations at Defendant's property, the Complaint sought relief in the form of "injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility." [Doc. 3, p. 13-14]. Plaintiffs also sought their attorneys' fees, costs, and any potential statutory penalties available under Colorado statute. [Doc. 3, p. 13-14, 15-16].[1]

On November 29, 2021, Defendant's counsel served its Rule 68 Offer of Judgment (the "OJ") on Plaintiff's counsel ("Shadinger").  See **Exhibit B**. A Notice was filed the same day. [Doc. 8].

---

[1] The Final Judgment did not grant Plaintiffs statutory damages nor have Plaintiffs sought or requested in their fee application request an award of statutory damages.

The OJ provides that Defendant would allow judgment to be entered against it, as follows:

- Defendant shall (within 120 days) identify mobility accessibility features at its hotel property that do not comply with the 2010 Standards of Accessibility Design and shall, within twelve (12) months, remove those barriers to the extent that such removal is readily achievable.

The OJ then provided that Plaintiffs' counsel could apply for fees, costs and state statutory damages, but that Defendant reserved the right to challenge the reasonableness of their application. Per Rule 68, the OJ remained effective for fourteen days.

Plaintiffs did not accept it.

Instead, on December 13, 2021, Shadinger made a baffling settlement offer to Defendant that would require Defendant to do (1) less ADA remediation work on the property, (2) would give Defendant more than twenty-four months to complete that work (as opposed to the twelve months Defendant agreed to in its OJ), and (3) would require Defendant to pay Plaintiffs $15,000 (representing attorneys' fees, costs, expert fees) to resolve the case. **Exhibit C**. With the benefit of now seeing how many hours Shadinger had incurred through December 13, 2021 (i.e., 8.7 hours x $400 = $3,480), it is clear that Shadinger's settlement offer was well in excess of what he had actually incurred thus far in the case and that he was impermissibly seeking a financial "windfall" from Defendant in exchange for allowing Defendant to remedy less ADA violations in more time than what it had originally offered in its OJ.

Undersigned counsel requested a line-item breakdown from Shadinger as to how he came up with the $15,000 number. Shadinger refused. Rather, he noted that Defendant should be able to resolve this case for that number because Defendant had recently received PPP funds during Covid-19 that put "them in a much better financial position." **Exhibit**

**D.**[2]

> **B.   Defendant's Motion for Judgment on the Pleadings.**

Plaintiffs' failure to accept the OJ and their refusal to settle for an amount that reflected the actual attorneys' fees and costs incurred through the date of settlement forced Defendant to get creative in order to get this case resolved. Accordingly, Defendant amended its Answer, admitting everything in the Complaint [Doc. 9], and then filed a Motion for Judgment on the Pleadings *against itself*. [Doc. 10].

Plaintiffs opposed the Motion for Judgment on the Pleadings—despite the fact that, if granted, it would have given Plaintiffs everything they sought in their Complaint—forcing both sides to unnecessarily incur attorneys' fees and costs. [Doc. 11].

Plaintiffs then retained their Florida-based "expert" to travel to Colorado and inspect Defendant's property, again. This was in spite of the fact that undersigned counsel informed Shadinger that Defendant had retained its own ADA inspection company, that it would be remedying the barriers identified in that report, and that it would be "duplicative and unnecessary" for Plaintiffs to bring their expert out from Florida again to inspect the same property that he had already allegedly inspected six months earlier. **Exhibit D.** Nevertheless, Plaintiffs flew their expert out a second time to inspect the property.

This Court granted Defendant's Motion for Judgment on the Pleadings, holding that Plaintiffs' arguments in opposition were baseless. [Doc. 19]. The Court then issued a Final Judgment on July 13, 2022 [Doc. 25], which provided the following:

- Defendant is in violation of the ADA;

- Defendant shall make all readily achievable alterations to the facility so that it is ADA compliant; and

- Plaintiffs may seek their reasonable attorneys' fees and costs.

This is precisely what the OJ, if accepted, would have given Plaintiffs back in

---

[2] In order to be forgivable PPP funds could only be used for payroll, mortgage interest, rent/lease and utilities (i.e., not to satisfy extortionate demands for settlement).

November 2021—except the OJ would have also allowed Plaintiffs to seek statutory damages under Colorado state law. The Final Judgment in this case did not give Plaintiffs that opportunity and thus was less favorable than the OJ Defendant made back in November 2021.

### C.      The ADA inspection reports.

Plaintiffs allege that their two expert reports (which are nearly identical) cost a total of $7,250.00.

In contrast, and with the goal of quickly identifying all the ADA violations at the Property so that it could remedy them, Defendant retained Colorado Inspection Services, LLC ("CIS"). CIS conducted a thorough inspection of the Property on December 23, 2021 and promptly issued a 75-page report that contained colored photos, diagrams, assessments, and recommendations to bring the property in compliance. **Exhibit E**. CIS charged Defendant $750 for the entire inspection and report. **Exhibit F**.

### D.      Defendant's post-Offer of Judgment costs and attorneys' fees.

Defendant incurred $6,190.00 in attorneys' fees defending this case *after* it served its OJ on Plaintiffs. **Exhibit G.**

## III.      LEGAL ARGUMENT

A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee, but a court has discretion to deny an award of fees and costs when "special circumstances would render such an award unjust." *Roe v Cheyenne Mountain Conference Resort Inc.*, 124 F.2d 1221, 1232 (10th Cir. 1997).  In *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835 (2001), the U.S. Supreme Court found that one of the purposes in giving a trial court discretion to outright deny an award of attorney's fees to a prevailing plaintiff in an ADA case is to discourage "extortionist" behavior. *Id.* at 618, 640 ("And Congress assigned responsibility

for awarding fees not to automatons unable to recognize extortionists, but to judges expected and instructed to exercise 'discretion'").  Rewarding Plaintiffs anything close to what they seek in this case—despite the fact that they rejected the OJ that would have given them a better result much earlier in the case, and in spite of their best efforts to unnecessarily prolong this litigation—would send a message to all serial plaintiffs that there are no consequences for bad faith and obstructionist litigation tactics. In fact, given that Plaintiffs' conduct caused Defendant to incur more than $6,000 in attorneys' fees *after* its OJ was rejected should be factored into the Court's determination of what is reasonable and even who the "prevailing party" in this case really is.

**B.      Neither Shadinger's proposed rate or time spent on this case are reasonable.**

The ADA states that the Court "in its discretion, may allow the prevailing party… a reasonable attorney's fee, including litigation expenses, and costs…" 42 U.S.C. § 12205.  The reasonable fee is determined by the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) Trial courts are not accountants, though, and "may take into account *their overall sense of a suit*, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice,* 131 S.Ct. 2205, 2216 (2011).

The reasonable rate is determined by the court's own analysis of the level of performance and skill of each lawyer who is being compensated and the market rate for private lawyers where the Court sits.  *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002) ("A reasonable rate is defined as the prevailing market rate in the relevant community for an attorney of similar experience."). A district court "must consider the market evidence in front of it to set a reasonable rate and may lower or raise an attorney's rate if the market so dictates." *Id.*  Shadinger believes that he should be entitled to comparable "Partner" rates without recognizing that he has less than five years' of legal experience (much

less than what a typical partner has), that he is a solo practitioner so he's not even technically a "partner" and that if he practiced at any other firm he would be considered (at best) a mid-level associate. In fact, on page 37 of the Report attached to his own affidavit, it provides that the median billable rate for litigation attorneys with 3-7 years' experience in Denver is $275 per hour. Furthermore, it appears from his affidavit that Shadinger has taken this case on a contingency fee—though he does not disclose his fee agreement with Plaintiffs—and that his entire law practice is built around servicing Plaintiffs' ADA claims. He offers no evidence that any client, anywhere, ever, including these Plaintiffs, have actually agreed to pay him $400 per hour for his legal services. He just apparently pulls that number out of thin air.

Undersigned counsel, by contrast, is a Partner at a highly-regarded firm in Phoenix, Arizona, has 11+ years of litigation experience, and has defended more than 400 ADA accessibility cases throughout the United States, including for some of the largest and most sophisticated real estate and hotel companies in the world. Notwithstanding this, undersigned counsel is billing Defendant at $300 per hour.

Plaintiffs should also not be rewarded anything close to the $20,000 they seek because they did not obtain better relief after more than seven months of litigation than what they could have received from the very beginning. Shadinger spent more than 22 hours (and more than $3,500 in "expert costs") for absolutely no reason other than that they apparently wanted to drive up the costs of the case and leverage a private settlement (for a monetary amount much greater than the law would allow them to receive). In addition, there is no representation in Plaintiffs' fee application that they have actually paid their "expert" the $7,250 he seeks. In all likelihood—and is typical with most serial ADA plaintiffs' cases, all the individuals involved on the plaintiffs' side, including the attorneys' and "experts" make their money solely from private settlements. Accordingly, other than the actual taxable costs incurred to file the Complaint, the Plaintiffs have no out-of-pocket costs.

The Court should also consider whether either party bears the responsibility for a delay in the resolution of the case and take that into account when determining what reasonable fee should be awarded. *Roe v Cheyenne Mountain Conference Resort,* 124 F.3d, 1221, 1234 (10th Cir. 1997). As discussed above, all delays and fees incurred after November 29, 2021 were caused by Plaintiffs' refusal to accept an OJ that gave them everything they asked for in their Complaint. Instead they unreasonably (and in bad faith) forced the parties to incur fees that they did not need to incur. They demanded settlements that were well in excess of what they would be permitted under the law. The Court should hold Plaintiffs and Shadinger responsible for these delays and tactics.

## IV. <u>CONCLUSION</u>

WHEREFORE, Defendant respectfully requests that this Court deny Plaintiffs' application for fees and costs, finding that their obstructionist litigation tactics caused both sides to incur fees and costs that were completely unnecessary.

Dated this 12th of August, 2022.

Respectfully Submitted,

*s/ Lindsay G. Leavitt*
LINDSAY G. LEAVITT
JENNINGS STROUSS & SALMON
1 East Washington Street
Suite 1900
Phoenix, AZ 85004-2554
Telephone: (602) 262-5825
Facsimile: (602) 495-2633
Email: lleavitt@jsslaw.com
*Attorney for Defendant Colorado Hospitality Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

js@shadingerlaw.com

_s/Lindsay G. Leavitt_